Good morning, your honors, Michelle Grimaldi-Stein on behalf of the people of the state of Illinois. Celeste Stewart-Streck on behalf of the people I may or may not be commenting on today. Mr. Lenz Lenz, L-E-N-Z Are you on any of the briefs? I'm not on any of the briefs that were filed in this court. I filed the most recent PLA. Oh, all right, fine. Can you spell your last name? Sure. It's Lenz, L-E-N-Z, like contact lens. Oh, all right. Sorry, I was having trouble hearing it. That's okay. All right, Mr. Lenz, you'll have 15 minutes to present your arguments, and from that you may set about some time for rebuttal. Thank you very much, your honor. You're welcome. Good morning again, your honors. I'm here representing LeRonn Warren. My name is Gilbert Lenz. I'm the Office of the State Appellate Defender. Your honor, as you know, this case has a long procedural history that even boils down to two fairly straightforward substantive issues. First, whether LeRonn Warren, a 17-year-old defendant who was serving a sentence of mandatory natural lay, would be allowed to litigate his claim of actual innocence based on the affidavits currently before this court. And second, whether that sentence, that unconstitutional sentence, can be reached in this appeal. I'll be commenting briefly on the second issue, the sentencing issue, but I would like to focus most of my time this morning on the first issue, the claim of actual innocence. Your honors, let me ask you this. When this case was sent back by the Supreme Court for us to look at it in light of another case, can we consider anything other than the sentence? Yes, we can, your honors. Tell us how. The ruling order for the Supreme Court consisted of two instructions. The first instruction is that this court was to vacate its prior judgment. That is what this court did in April. That judgment no longer exists and has no binding or precedential authority on this court's next decision, its third decision in this case. And this court envisioned this exact scenario when it passed its own local Rule 28B, which is a rule that's been vetted by the Illinois Supreme Court, where this court recognizes that where the Illinois Supreme Court specifically orders this court to produce a holding on an issue, this court must do so. And the Illinois Supreme Court knows how to do that. But where the Illinois Supreme Court does not specify what outcome this court should reach on the matter, this court is free to enter any order that it would as if it was the first time before this court. And that's the authority this court has now, the same authority it had the first time as before this time. In this case, does the defendant have to prove the cause of prejudicedness? No, Your Honor. This is a claim of actual innocence, a successive petition. So there's no cause of prejudicedness issue. It's under the evidence standard for a culpable claim of actual innocence. I would note, however, that there's a reason to relax that bar in this case, and that is the procedural deficiency in the prior proceeding. Mr. Warren had appointed counsel who was assigned, appointed to investigate and file his initial post-conviction petition. And that counsel made a gross legal error when he filed a petition that was a nullity. That petition was frivolous on its face because it had no affidavits attached. That was a gross legal error that caused a deficiency in the prior proceeding, and that's the only reason Mr. Warren is under the culpable claim standard behind the bar now, and that offers a reason to relax that standard here. Could we briefly just go back to the mandate issue? Sure. So when the Supreme Court entered that order, January 26th of this year, they said in the exercise of this court's authority, the appellate court is directed to vacate its judgment. And then it says the appellate court is directed to reconsider its judgment in light of Deaton v. Davis to determine if a different result is warranted. Now, my understanding is that, and we entered an order vacating our judgment, but actually our judgment is the last line of every decision we always enter. We either say judgment confirmed, judgment reversed, modified or revanded for such and such. But that's the judgment, not the body of the opinion. So when the Supreme Court told us to vacate our judgment, they told us to vacate the judgment affirming the dismissal of the successive PC. They've never directed us to vacate our decision. So I go back, I think, to Justice Gordon's question. What allows us to revisit that opinion? Well, Your Honor, the first thing I would say, Justice McBride, is that this court has never issued a final judgment in this case. In both of its prior decisions, there was a time with PLA. The judgment had never become final. Before the judgment becomes final, this court has the authority to essentially change its mind and withdraw the opinion. In this case, it was ordered to vacate the judgment. That was the second part of the instruction. So the first part of the instruction is that this court's prior judgment is vacated, and that pertains to both Argument 1 and Argument 2. Now, this court has plenty of authority. Because the Supreme Court included no limitation on this court's authority in its revand order, besides the Davis question, which I'll address in a moment, because the Supreme Court put no affirmative limit on this court's authority on revand, this court is free to reach the first issue just as it would if this case was performed for the first time. I'm not sure I understand what you mean by plenary authority, but I want to refer you to a case called People x Rel for Test versus the College, where the Illinois Supreme Court talked about the purpose of supervisory orders. And in that decision, they say, Supervisory orders are granted by our court only in limited circumstances. Their predominant use is to address issues which are brought to our attention in the context of petitions for leave to appeal, but which do not warrant full briefing, oral argument, and issuance of an opinion. The most typical example of this is when a new opinion is released by this court or by the Supreme Court of the United States, which appears to be dispositive of other cases pending before us on petitions for leave to appeal. So in this particular case, the first thing that they did was they ordered that the petition for leave to appeal is denied. Then they asked us, well, they told us rather, to vacate our judgment, not our opinion. And then they said reconsider in light of Davis. Now, wasn't Davis about the very issue of the sentence in this case? That it was retroactive. The idea that a juvenile could not be sent to mandatory life imprisonment was retroactive. Yes. And that the court in that case affirmed the decision of the appellate court, wherein the appellate court had said that in Davis, the individual who was under 18 at the time was entitled to a new sentencing year. Yes. So isn't that really what this case was about? Our appeal here is really just looking at Davis and determining whether he should get a new sentencing year. Under the Supreme Court's remand order, that's the very minimum this court must do on remand. But the only affirmative indication of this court's authority in its current decision is that in its discussion of the second issue, it must include a discussion of Davis. Davis must play a role in this court's discussion of the second issue. That is the only affirmative indication. Well, doesn't the court have an inherent power to correct its mistakes? It does. Inherent. Yes. That's a revenge, Your Honor. And, again, there's been no final judgment from this court ever issued in this case. This court is as free to issue a new decision, as it is free to reissue the prior decision. Well, let me ask you this, Ms. Lentz. If the mandate is actually directing us to do one thing and one thing only, we don't have any power to correct anything else. You do. And that's under the Supreme Court Rule 615B, which this court clarifies. Again, as I said, this court has envisioned this exact scenario in its own local rule, which is vetted by the Illinois Supreme Court under its own Rule 22H. All right. Well, then I'm going to refer you, then, to People v. Campbell v. Manchin, another case involving a mandate in which the appellate courts did not follow the mandate of the Illinois Supreme Court. And the Illinois Supreme Court explained, as they have in numerous cases, that when a court, a higher court of review, issues a mandate, that lower or inferior court has to follow the mandate to the letter. And in that case, an Illinois Supreme Court case, the appellate court, the justices were named respondents in a mandamus action because they hadn't followed a mandate of the Supreme Court. And so the court answered their question about whether we can rely on some other rule of ours, or 615, to do or correct what we think is improper. And they said that the respondents, those appellate justices, had absolutely no right to rely on the prior rule under the Civil Practice Act, Section 92, precursor of 615 and even the other rule you cited. And then they said that they really can't make a mistake. But we can. And that's fine. They said a decree entered in accordance with the direction of this court, and they were referring to themselves, cannot be erroneous. This court may err in its directions to an inferior court, but however erroneous the directions given may be, it is the duty of the inferior court, asking us to directly follow the directions contained in the mandate. And they rejected this idea that the inferior court had the power to do anything other than what the Supreme Court told the appellate court to do. So what would be your response to that? I wouldn't disagree with that at all, Justice McBride. The only way that this court could violate, this court has already complied with the first part of the Supreme Court mandate, which is this court has vacated its prior judgment. It must issue a new decision as to both Arguments 1 and 2 under a new case number. The only way this court can now violate the Supreme Court's mandate is if it discussed Argument 2 without discussing Davis. That would be the only way. That would be the only decision this court could issue right now to violate the Supreme Court mandate. Well, I think we have every intention of discussing Davis and reviewing the previous decision, and perhaps you have what I would call a very compelling argument regarding the sentencing issue. Now you're going to go to that next. All right. We've talked about the mandate. I think we understand your position. Let's proceed with your actual analysis. Okay. Thank you, Your Honor. Counsel, let me ask you about that. So you mentioned the word cause, and you said that the deficient performance by post-conviction counsel in Round One was the reason why this wasn't brought sooner. If you're going under an actual innocence claim, where does that point that you're making fit in? Are you saying that it's not newly discovered but it should be excused for a particular reason? How does this fit into the rubric of the actual innocence claim? That's exactly right, Justice Adams. It's under the first prong, the newly discovered evidence prong, and the due diligence standard that's required in a successive petition. Well, again, we're under a successive petition regime because of counsel's filing of a melody the first time around. So we're not disputing that it's the coverable claim, successive petition standard here, but there's a reason to relax that bar, and we're not saying that Martina B. Ryan is controlling in this case, but it's analogous that the procedural default in Martina's provided a reason to relax the procedural bar. And in the same way, the deficiency of counsel in this case is a reason to relax the bar to the actual innocence claim. We know actual innocence claims don't have a higher bar than claims of unfair trial, like an effective assistance claim. It's a lower bar. It is a lower bar. And so if there's a reason to excuse the default in Martina's, it's certainly a reason to excuse the default here. Can you cite any examples in the case law where we have found that the evidence was not newly discovered but was not previously brought forth because of something like this, deficiency of counsel? I can. If no one agrees, Your Honor, I'd be happy to file a motion to set an additional authority. But this case – We've already had enough of those. Yes. We have a great attempt at setting another one. I would be happy to, Your Honor. There's a case that was called Peter v. Nicholas, 2013. I can read you the cite-out later. But, Your Honor, I thought that this – well, isn't Peter v. Nicholas a coerced confession case? It is. My question would be why, and it's a cause of prejudice case. But aren't there multiple decisions now from our court? I believe I know some of them. I'm not sure. But there are a number of cases now involving coerced confessions, where the reports have indicated that the pattern and practice of torture was not readily available to many of the defendants that were, in fact, or made allegations of torture. And so this court, on several occasions now, has indicated that in those cases, the cause has been established because the information that is continually coming out and new regarding patterns and practice of abuse were not available at the time that the claims were made. And in addition, the recent Supreme Court case defining prejudice has indicated that there cannot be a harmless error whenever a coerced confession is used to obtain a conviction. So there are a number of cases that expound upon cause of prejudice. Nicholas is one of them. There are multiple cases. However, I don't think that those cases are analogous to this case at all. There is no claim in this case regarding any coerced confession. It's a claim, I believe, of actual innocence based on newly obtained or obtained affidavits. Is that right? That's right. All right. Now, in this Edwards case that we were supposed to look at, when the last time we got a supervisory order, Edwards was the case that said there's a different standard for a successive petition in terms of what has to be shown initially. Correct? Correct. All right. And under the Edwards standard, what is that standard? That no rational juror would have convicted the person? You have to raise the probability? You have to raise a culpable claim. It's awkward wording, but you have to raise a culpable claim that raises the probability that no rational trial of fact would have convicted. Or no reasonable juror. No reasonable juror would have convicted. In this case, it's a bench trial, yes. Right, but I mean the language in Edwards was that. Yes. All right. And then in Edwards, Justice Freeman wrote that decision, and I believe they went on to consider the affidavits. Did they not? They did. All right. So is that something we do, too, or no? You definitely should consider the affidavits. That's the crux of the issue here is whether these affidavits provide enough evidence, and this is the language used in Edwards and Ortiz as well, in both cases from the U.S. Supreme Court. The nuts and bolts question when you get a successive PC raising actual innocence is whether there's enough evidence in the petition or attached to the petition to warrant closer scrutiny, and I believe the Supreme Court views that phrase, to warrant closer scrutiny of the conviction. Don't we look at the affidavits in light of the evidence presented at trial? Yes, you can, or you should. And when you take these affidavits in light of the evidence at trial, that's exactly why Mr. Warren should be allowed to file this claim in the circuit court. Well, why did they reject the affidavits in Edwards? They went through them, they rejected them. Why did they do that? There were three affidavits at issue in Edwards. The first two were alibi affidavits, and the U.S. Supreme Court has consistently, now in this court as well, made a distinction between alibi affidavits and affidavits that contain confessions or I-knew-I-witness accounts, and alibi affidavits are qualitatively weaker than the latter category of affidavits. So they rejected the alibi affidavits out of hand. The third affidavit was, I believe, a confession affidavit from a co-defendant, and that co-defendant provided the affidavit years after the trial, and of course he had a Fifth Amendment right not to imprison himself earlier, and so the Supreme Court said this affidavit is newly discovered, but it didn't satisfy the third point because it wasn't strong enough evidence to say that a reasonable trial fact might not have convicted, or probably would not have convicted. It didn't raise that probability. Well, Mr. Lentz, I'm trying to understand here. Do you have to meet the test for actual innocence or not? Mr. Warren has to meet the pleading standard for a claim of actual innocence. He doesn't have to prove his actual innocence before this court. And I'm not suggesting, but do you have to meet the four prongs of an actual innocence claim? You have to raise a colorable claim so that all three prongs are satisfied. All three or four? Well, it depends on whether you count due diligence as a separate prong, but yes. Newly discovered evidence, material, non-cumulative, and what the Supreme Court has called the most significant factor, that the evidence is so conclusive it's likely to change the outcome on the trial. Yes. And you do that when you prepare what the new or what the affidavits are with what was actually presented at the trial. Yes. All right. What was the significance in Edwards when the court took a little bit of a step, back step? First they referred to Ortiz, the elements of the claim of actual innocence, which we just discussed. And then they said it's appropriate to note here the United States Supreme Court has emphasized that such claims must be supported with new, reliable evidence, whether it's the exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. And they cite the Schluth case. And then they said because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful. I don't think that that's beyond the end of the type of evidence that can be produced. But you would agree, would you not, that there is no, in this case, there hasn't been any presentation of any new or even older eyewitness accounts. There is one. There are statements. There are statements against people of interest that are firm to eyewitnesses, in fact, But this is my question to you. Do you know of any case that has ever interpreted a third-party statement to another person as an eyewitness account? I'm not aware of any case I've ever seen that would now say that when someone makes a statement to another party and that declarant says that he was there or he saw something, that that's now, that's an eyewitness account. I'm not aware of anything like that. Well, I would never call an eyewitness's testimony about a statement that she heard was herself an eyewitness account. The question is whether this is evidence and whether Mr. Warren has raised a credible claim of admissibility, that this evidence would be admissible at a new trial, and I believe he has. All right. Well, let's talk about the affidavits. All right. Henry, do you have an affidavit here from somebody who actually tells us who the shooter is? Can we use three affidavits from the shooter himself? And maybe it could be the shooter and an affidavit from the driver of the car. And I should note here, this is consistent. Well, I think we better really look at them both. All right? I'll test you. Great so far. I mean, if these affidavits are true, then this is an innocent man. This is innocent. I said if the affidavits are true, then this is an innocent man here. Exactly right. The magnitude of this issue overcomes, I believe, not only the relaxed bar of a credible claim, but it does show how to make a credible claim here. It's the second time you've talked about relaxing the bar. So let me come at this question in a different way. I asked you before if you could cite me a case that you cited Nicholas, but Nicholas is clearly not an actual innocence case. Do you know of a case under actual innocence where a court looked at it and said, it's not newly discovered because it was either there at trial or it was there at the first post-conviction, but for some reason, whether it was sufficient performance or not, or for some other reason, they relaxed, as you put it, they relaxed the bar and said, we're going to consider it even though it is not technically newly discovered. Where do you get it? If not, where is our authority to relax this bar? Well, I don't know what case I have to tie my head on with an actual innocence case, but I will come back to Nicholas if I can talk about that for one moment. Nicholas was a causing prejudice case and it was a confession case, a tortured confession case, but it was different from all those cases because the reports that Justice McBad referred to earlier were out before the defendant's prior firing. And he failed to reach an appeal and took a thin lead. It was thin lead. Yeah. And that thin lead is what led this court to relax the bar to successive petitions. But that was under cost. That was a two-part test, cause and prejudice. That was cost. Under the actual innocence, we have these three substantive requirements and then a fourth procedural requirement to be newly discovered. Yes. That's what I'm trying to focus on. How do we relax that bar? What authority do we have to relax that bar? Because in this case, the only reason it wasn't presented when it was newly discovered was the lawyer screwed up. That's true. I'm not saying that's what we think, but that's what you're potentially pointing to. Yes. What authority do we have to do that? Well, the authority is that it's clearly analogous to Martinez or Nicholas' situation. And we know, as the court said earlier, that the bar to actual innocence claims is lower than the bar to non-actual innocence claims that are subject to causing prejudice. So if the Martinez and Nicholas situations satisfy the procedural element of cause, then certainly a lawyer's gross ineffectiveness, as we see here, must satisfy the procedural point that you see here, which is the newly discovered evidence in due diligence. Well, you're saying your actual claim is that the initial condition was then defective in some fundamental way, aren't you? You're saying that the lawyer that did the PDC was grossly negligent. Absolutely. But you realize that, and I'm not sure I agree with any of that, but you realize that the performance of post-conviction counsel does not equate with a constitutional violation. I do agree with that. Now, in this case, and this case has a long history, but in 2006 there was an appeal from the initial post-conviction petition. You're aware of that? Yes. There was the 1997 first Rule 23. I can't remember who the author of that was. Then there was a 1999 decision about the second murder conviction. Then there was the 2006 Rule 23 for the – I'm not certain who represented Mr. Warren back then, but the two post-conviction petitions were joined in the 2006 appeal, and at that time Mr. Warren's lawyer did not argue that the previous counsel was ineffective or actually its performance was unreasonable as a post-conviction attorney. Do you remember that appeal? I do. I do. What precluded Mr. Warren from raising this issue not? And why isn't it barred? Because it wasn't raised when it could have been. But this is not an issue that's before this court. The question is now whether prior post-conviction counsel offered reasonable assistance to Mr. Warren. No, but that was found by our own decision law of the case. In other words, in 2006, when we affirmed the dismissal of both post-conviction petitions, we affirmed the dismissal, and most of it was based on a claim of factual innocence. That is the appeal we're dealing with, right? I mean the same underlying conviction. He had two cases. Yes. That decision certainly would be law of the case if Mr. Warren were raising those same issues in this current appeal. The only, I need to stress here. He didn't raise the excellence. That was raised. If you look at our 2006 23. Yes. I'm sorry. But that was before, that was on a petition that had no affidavits attached. Yes. Yes. And that's, and so the current appeal. But why couldn't the appellate attorney have argued the unreasonable level of assistance that you're saying now post-conviction counsel was acting under? Appellate counsel in that case very well may have could have made, very well may have had the possibility of raising that argument. The only reason is the prior post-conviction counsel is only an issue here on the procedure of bar. It's only a reason to relax the procedure of bar. It's not an issue on the merits. Doesn't the record show, even in the affidavit of the defendant's mother, that they took this Willie Matlock to the attorney's office, and this is what she said way back in 2000. I spoke to the actual perpetrator of the incident in front, who is slash was the shooter of Ebony Higgins, a Willie Matlock by phone and in person, and Matlock confessed to me that he shot Ebony and LaRon was not in the car. And then she says, I took Matlock to the attorney's office and he did not confess. So this person, apparently, according to this affidavit, would not confess. So are you saying that the lawyer who didn't present the affidavit because no one would confess was acting unreasonably? He was not acting unreasonably for not presenting an affidavit that didn't exist. Where he acted unreasonably was when he filed a petition that was a melody. Where his error was in believing... What do you mean it was a melody? It was required, on its face, it was required to be dismissed because it had no attached evidence. But if a lawyer can't get an affidavit, you're saying he's ineffective and you will say for post-conviction purposes he's acting unreasonably. Yes. Because when the person comes into his office and says, I'm not going to confess to this, you're saying he's supposed to prepare an affidavit as an officer of the court, present it to the court, and say he refused to confess, but here's the affidavit anyway. No, no, that's not right, Your Honor. If Mr. Medlock had given a statement to the lawyer just as he gave to the three other witnesses admitting his involvement as the shooter, then the lawyer could have provided his own affidavit to support Mr. Warren's petition. But the lawyer had no duty to provide an affidavit for Medlock that Medlock is not willing to sign or notarize. I don't think there's three affidavits where this Willie Medlock is saying that I shot Ebony. Are you sure about your affidavits? I just read you the Muller's. She says, I spoke to the actual perpetrator who was the shooter of Ebony Higgins. Willie Medlock by phone and in person. And Medlock confessed to me that he shot Ebony. That's really the guts of her. There's nothing else there except for that. So she says that he confessed. Now, the next person is Andrea Young. Andrea Young said that she was a nurse. She knew Petitioner. She said, I do not know Willie's last name, but I do know a guy named Willie who was a friend of Jermaine Bledsoe. And then she says, Willie told us that he knew Petitioner was in prison for a crime Petitioner did not commit. Willie said he knew Petitioner was innocent because Willie was in a car when the shots were fired. Willie also told us the shooting was a drive-by. Willie admitted he had a gun and that he fired the gun, though he denied to intend to kill anyone. So that's the second. Now, do you think that someone could say that I talked to a guy named Willie and Willie said I shot Ebony and that that would be the kind of evidence that is so elusive? Let's talk about that one, Anthony. Is that the kind of evidence where someone doesn't even give a name and says, Willie? Is that the kind of evidence that you would say, you would argue, is the kind of convincing evidence that would change the result? Just talk about that one. Well, if this petition were not solely on the Andrea Young affidavit, it would be a much weaker claim. But Mr. Warren filed a petition with her affidavits. All right, so let's go to the next one. Should those things be worked out in another two years? Absolutely, Your Honor. Those are the kind of questions that need to be resolved. The state can raise all of these questions about the affidavits at the motion to dismiss at the second hearing. Let's talk about Rae Ann Felton. That's the other affidavit. She said that she talked to Jermaine Glensa. And then she said, Jermaine told me he knew he was, he knew that he knew, oh, that Petitioner was not the shooter because he was in the car. And then he said, Jermaine did not say who fired the shot. So he's never said who fired the shot. Is that right? Jermaine did not say who fired the shot. But he said Petitioner wasn't present. Petitioner was on the car, yes. So is that a statement that is an admission that Willie Madlock, or is that something a little bit different? That's an admission by Jermaine Glensa that he was in the car in which the shots were fired, which is consistent with Mr. Warren's trial evidence. Mr. Warren presented an eyewitness in the back seat of the car who said Jermaine was driving and Willie Madlock was the shooter. The defense evidence has been consistent from trial through the fourth affidavit. It's just like the Ortiz case, Your Honor. Mr. Ortiz filed a personal petition. You know what? Justice Gordon wrote Ortiz and I was on Ortiz. I don't think Justice Ellis was, but we remember that case quite well. And in Ortiz, if I'm not mistaken, there was a witness who came forward after about 10 years who had indicated that he left the state and had withheld his information regarding the shooting for years. He felt extremely guilty, came forward, and was an eyewitness, okay? Not a third-party statement from a mother, a friend, a girlfriend saying that someone didn't do it. So there's a big difference between the Ortiz case. And in the Ortiz case, the Supreme Court eventually said the standard was not cause of prejudice. Right? Right. The actual innocence required less. Less. And the reason is, this case is like Ortiz. I shouldn't have said just like Ortiz, but it's like Ortiz. And I guess in this sense, Your Honor, you mentioned if we're dealing with the Andrew Young affidavit alone, this is the kind of petition that reasonably could be dismissed. And Mr. Ortiz's initial petitions, I believe the first two, were both dismissed because the affidavits were not strong enough. It was only when Mr. Ortiz had gathered strong enough evidence, and that came with the witness that you're describing. You know, the fourth affidavit, Aisha Daley, another friend, was almost virtually identical to the affidavit that Justice Freeman examined in Edmonds. And the affidavit said that, again, this is also another description of a person named Willie. Nothing more. Willie, what did she say? Willie came by her house, mentioned he was the actual shooter, and that his shooter was not involved. Well, when Justice Freeman was examining the co-defendant affidavit in Edmonds, he said that this, first of all, he did examine the affidavits. And we do accept as true all well-pleaded facts, but we never accept, and we're not required to accept conclusions. So in this particular affidavit, this was almost virtually identical to the one presented by the co-defendant in Edmonds, and Justice Freeman points out that saying someone didn't fire the trigger is not a point of accuracy. In this case, she doesn't take him away from the scene at all. So this affidavit is almost identical to the one that was actually reviewed by the court in Edmonds, and rejected because they said that this would not be the type of evidence that would likely, or the type of convincing evidence that would change the outcome. When you compare it to the trial testimony. Again, that would be taking the daily affidavit alone. I mean, in Edmonds, there was only one affidavit there, and as far as it was similar to daily, it was being addressed alone. So numbers, the sheer number should change the decision, or should we examine each affidavit? You're saying we should. You should examine each affidavit and then consider them together, and taking them all together along with the trial evidence, is there enough evidence in this record to warrant further scrutiny? I'll follow. All right. For instance, there are second-stage proceedings. I think I'm calling a motion to dismiss. A second-stage proceeding in an initial post-conviction. This is a successive post-conviction petition. The question is, do you have to meet the standards of Edwards? And, you know, recently the Supreme Court explained that because the prejudice test, and we're going to veer off on that, that that's very similar to the Strickland test. At some point there has to be a prejudice show. But this is not a first stage. Absolutely. It is not. And so, you know, we don't consider it such. Now, generally speaking, you would agree, would you not, as a good, solid lawyer, that third-party admissions are generally hearsay and not admissible. True? They're definitely hearsay affidavits. And generally not admissible. Generally not admissible unless there is issue of trustworthiness. And that's, again, another issue that needs to be litigated at the second and third stage. The fact is, what we know about these statements are the following. They are statements against penal interest. All three statements by Willie Madlock indicate that he was present at the shooting, if not the actual shooter, as he said to Ms. Warren. And they're all statements against penal interest. And there's some collaboration. There is some addition of trustworthiness in this record. And that's based on the witness, the friend, the longtime friend of the defendant, who testified at trial. He testified at trial. He's also a friend of Willie Madlock. Yes. And, of course, it said Willie Madlock was the shooter. Exactly. There were two defenses raised at the trial. One was that he was somewhere else. And two was that Willie Madlock was the shooter. They were the defense's evidence. There was a second defense, and there was a prosecution. Well, I mean, they were both raised. Yes. It was reasonable doubt. But it was that someone else committed the crime. Yes. And, in addition, I didn't commit the crime because my alibi witnesses placed me somewhere else. Yes. Now, so do you agree that, as a general rule, that a statement of a third party admitting a crime is generally not admissible? Well, the rule says that, in a criminal case, statements against penal interest are not admissible unless there is the addition of trustworthiness that would allow them to be admitted. Here, so at least Mr. Wynn is going to show some addition of trustworthiness here. Again, it's only a color of a claim of admissibility he has to raise here. This is a first-stage case. Well, it's a first-stage review of a successive petition. We're not disputing a little bit of color of a claim standard here for a successive petition. There are more factors of reliability than importance. They are important, but this is only one of the pleadings. Two of the chambers... You're talking about the chamber's facts that are being drawn. Sure. Chambers is the Supreme Court decision that laid out when the general rule can be relaxed. Yes. That generally, if a person confesses to someone else, it's not usually allowed because the potential for fabrication and perjury is obvious. Right? Right. And they said they weren't announcing anything new, but the chambers case had some fairly unique facts, but they did cite four factors that would suggest indicia of reliability, and two of them are probably fairly important. The first one being that the statement made to that other person was made immediately or shortly after the crime occurred. It was made to a person that would be a confidant. Okay? And that's the first indicia of reliability. Now, in this case, these statements were never made shortly after the crime. We're talking years later. These statements were never made to a friend or a family member or a confidant. They were actually made to friends and family of the person charged with the crime. So that first indicia of reliability, no matter how far you want to stretch it, these statements were not made shortly after the crime. They were not made to a friend, a family member, or a confidant. So that thing is gone. As far as a statement against penal interest, Jermaine is not, Jermaine Ledsoe, whatever, his statement to someone is not a statement against his penal interest at all. But taking the other ones, taking the other ones, then you have the prong regarding whether it's corroborated, and you indicated that it's corroborated because DeJuan, I forget, the witness, who testified that it was actually Willie, and then you've got the fourth one, that the person is subject, the declarant, excuse me, the declarant is subject to cross. And in this case, there isn't a single one of these affidavits that suggests at any time that the declarant was available for cross. Is there? No. So you've got two, and probably those two factors, the one at the front end and the back end, are probably the most reliable indicia of trustworthiness so that a court could allow it. Let's stop a minute with the word trustworthiness. Isn't that an issue that the trial court should decide in an evidentiary? I mean, how do you decide that in the other way? Well, certainly, Your Honor, I mean, I don't disagree with Justice McFarland, but two of the factors disfavor admissibility and two of the factors favor admissibility. Every court that's addressed chambers has said this is a, so you don't have to have all four factors present, and it's also non-exhaustive. Non-exhaustive. There would be other factors. Yes. So Mr. Warren's petition has raised a color of acclaim that two of the chamber's factors favor admissibility. On the pleadings, the only way that leads to file, leads to file a petition, the only way it can be denied is if this court can say as a matter of law, as a matter of law, that those who resist testimony is inadmissible. Not inadmissible, because that's not what the Edwards Court did. That's not what Justice Screamin did at all. He did not say that the evidence was inadmissible. Taking it as true, taking it as true factually, not conclusion, taking it as true, is this the kind of evidence that would likely change the outcome? And we compare it to the evidence of trial. In this case, as you I'm sure well know, there were two eyewitnesses who identified the defendant. There was a fingerprint found in the car. When the eyewitnesses were first interrogated or asked questions about it by the police, they actually gave the police two numbers of the car's license plate. They described the type of car. A couple of days later, they both saw that vehicle. They got the full license plate number. The police were advised the car was stopped, and that was the beginning of the investigation into the charges. But that's the state's case. Then there was the defense case of the LFI and Mr. Phillips, I think. So, anyway. All right. So you believe that the evidence should be decided at a second stage and that you have established that the evidence is new, material, non-accumulative, and likely to change the outcome. Absolutely, Your Honor. On the pleadings? The second stage is all caught. The lawyer comes in and he changes these affidavits and puts it in the proper form. Yes, and the state, in this motion to dismiss, can raise any weaknesses of this court identifying the affidavit in the motion to dismiss. The only question here is whether there's enough in this record to warrant further scrutiny. And I think Mr. Warren, even assuming, but even if you don't relax the procedure of our successive petition, which I think you should, even under the color of a claim standard, on these pleadings he makes a color of a claim. And we're talking about a 17-year-old serving natural life in prison. Well, you know what? That's your best point. Let's go right into that, a 17-year-old serving a mandatory life sentence. The Supreme Court has told us to reconsider in light of Davis. So what do you want us to do in light of Gray and Davis and what have you? Okay.  On the sentencing issue, we know, first of all, that Ron Warren falls squarely in the middle of the Alabama in people v. Davis. So his sentence is unconstitutional. Now, I hope you've seen my motion to set additional authority from Thursday, setting constant unknown to the state. Yes, we did. And if we haven't allowed it, we would allow it. We were in the process of doing that again, I think. Yes. Okay. And then the state tendered this morning to me the response to that motion, and I will go into it briefly before the argument. But there's one thing I want to say about Thompson here, Your Honors, is that Thompson demonstrates by approving of the way the 2nd District Appellate Court handled the Luciano case where they granted the new sentencing hearing in the appeal on a claim of wage for the first time in the Appellate Court. The U.S. Supreme Court has approved of a procedure. Basically, the U.S. Supreme Court is saying if you fall squarely in the middle of the Alabama, unlike the Thompson defendant. He was 19. He was 19. Was he claiming that he should have an opportunity to present his claim that even a 19-year-old shouldn't do that? Yes. He was having to defend himself. In the Thompson court, I believe at the very end they said that they were not in any way suggesting he should be excluded from raising his claim in a successive PC should he be able to establish a bus in Fresno, TX. Yes. What about Gray? So, Gray was issued in the middle of November in the motion to state that as additional authority. I don't know if this court is aware of it, but the panel that issued that opinion withdrew it on November 25th, I believe. So, that opinion no longer exists. Oh, they did? They did. Well, no one cited that. I put that in my... In your most recent motion? My most recent motion, yes. That's one of the earlier points before I talk about Thompson. It was through Gray? It was through Gray, yes. And it's not an opinion, wasn't it? It was a published opinion. It was withdrawn, I believe, on November 25th, and presumably that doesn't lie to the fact that Thompson is going to be issued that week or the following week. Right. And Thompson... But Thompson is consistent with Gray, right? No, Thompson is consistent with Luciano. Luciano and Gray are the two cases here that are at odds with each other. Gray no longer exists. Well, Gray was 14-01 in any of them. It was not a close conviction. Right. And in Gray they said that he should... They made a suggestion that this was appropriate for a successive post-conviction. Yes. That's what they said to Gray at the end of the day. Yes. But they've withdrawn that. Yes. All right. And so Thompson approved of the procedure, Luciano, where a defendant who filed a successive PC that was on appeal when Miller came down was allowed to raise the Miller claim for the first time on appeal. It's retroactive under Davis, so we know it applied to that defendant. And under Thompson, by approving of that... And I'm sorry. The Appellate Court granted him a new sentencing hearing in that appeal without remanding or anything. And the Orange Court has now approved of that process because Miller v. Alabama is a retroactive constitutional rule. So this court is... Which is what Davis held. Which is what Davis held. Which takes us back to the original... Exactly. Would you agree, Mr. Lansing, I'm not sure you would, but if the mandate is clear and we should only be looking at the sentencing, would you agree that that's all we should do? I'm just saying, if the mandate is directing us to look at Davis in light of its pronouncement that it was retroactive, would you agree that that's... If that's what it says. You're saying it says something more. But if we were to interpret it as limiting us to the Davis issue... Well, also, in this case, addressing Argument 2, this court is entirely, based on Miller, Davis, and Thompson altogether, this court is entirely willing to grant Mr. Warren a new sentencing hearing in this appeal. Oh, absolutely. I think you're right about that. Okay. So you're finished with your sentence? I am. And with that, we would ask that you rename this case for second stage proceedings on the actualness of the claim and grant Mr. Warren a new sentencing hearing after it actually is the claimant's result. Thank you, Your Honor. I'll give you a few minutes for your final. Would you be arguing on the sentencing issue, or would that be the staff? I'm arguing on the sentencing issue. Good morning, Your Honors. Once again, my name is Michelle Grimaldi Stein. I'm an Assistant State's Attorney, and I represent... Can you tell us what you believe our authority is here? When the defendant filed his PLA, Your Honor, he specifically raised two issues. He raised this court's majority decision that leave to file was properly denied. And then he raised this new sentencing issue, and he asked that the court either grant his PLA or hold his PLA pending the outcome of Davis so that it could be remanded for reconsideration in light of Davis. And that's exactly what he got. He got a remand for reconsideration in light of Davis, and that's what this is before this court on. Well, he also got a vigor of the original opinion. He did. What's the effect of the original opinion now that it's been vacated? Has LaRon Warren got a ruling on his denial of a successive post-conviction position now that he's vacated a Davis opinion? The judgment affirming no longer stands. I'm not sure that I disagree with something that Justice Ellis just said. I'm not aware that we entered any order vacating any opinion in this case. We entered an order pursuant to the supervisory order telling us to vacate our judgment. And our judgment was vacated, but we were not directed to vacate our opinion. So I don't agree that we vacated our opinion. However, I do agree we're going to have to provide a new opinion one way or the other. And because if we reconsider in light of Davis, that opinion obviously will reconsider the sentencing issue. But I, you know, I may be wrong. Now that we have vacated our judgment, does LaRon Warren have a ruling in the appellate court on the denial of his successive post-conviction position? Technically, no. But there's nothing, there's no, the determination that Lee's defile was properly denied is unaffected by your reconsideration of the sentencing. And so the ruling that was issued, this court's determination that Lee's defile was properly denied is unaffected by whether or not it has, this court needs now to reconsider the sentencing issue. The logic of whether, because the defendant never raised a Miller claim in his successive petition. That was a newly raised claim for the first time in a supplemental brief following remand by a supervisory order from the Supreme Court. And we're getting so far afield of what was in the petition here. Okay, so when this court was ordered to reconsider in light of Edwards, the defendant raised a newly raised claim. Okay, but we were also directed to vacate our previous opinion. Judgment. Our previous judgment. Has LaRon Warren received from the appellate court a ruling, a judgment, on the denial of his successive post-conviction? There is no judgment. Are we supposed to leave that undecided? No, Your Honor. Then what are we supposed to do then? The original ruling is the law of the case. It is, it stands. There is nothing in Davis which warrants a change in that ruling. And that ruling should stand. But even if, the reason, Sgt. Davis, reasons why you were, to show that you correctly decided that issue. But if it would be okay with this court, I would like to try and address this Thompson issue and the Davis issue first. Because I think that that's a much more easily defined narrow issue. And that concerns, because the defendant did not raise this claim, irrespective of whether Davis said that this was a new rule of law, a new substantive rule of law, and that the defendant may be entitled, if he files a successive petition where he does raise the issue, he is not entitled in this court, under established Supreme Court precedent, to raise a new claim that was not presented in the petition and to obtain relief on it, to raise it for the first time on appeal. But don't you concede in your, one of the motions to tie the issue of authority or somewhere, that he would be entitled to file another successive post-conviction petition wherein he would claim that he was 17 at the time that he was sentenced to natural life. And that is an unconstitutional sentence because he was under 18. And the Illinois Supreme Court has said that that, those decisions are retroactive. So, why should we not permit this issue to go back for a sentencing hearing, rather than say, and do what you're suggesting? For exactly the reason that... Where is judicial economy in that? Before I forget, I did file a response to the defendant's motion to cite Thompson. I'm not sure that the members of the court, I filed it yesterday morning. Did you receive it? Yes. Because I have copies in case you did not. Okay. So, and I think Thompson answers that question. So, Thompson was a 213-01 petition where the issue wasn't raised. Just for a moment. If these affidavits are true, this is an innocent man, isn't he? Well... I mean, is it the state's position that this is like a ball team? You get a contract and you have to win every case when you see evidence that it could be an innocent man? Shouldn't he have at least an evidentiary hearing on that? Only if he meets his burden under Edwards, Your Honor. That's what the Supreme Court has said. It's his burden. Well, I think he has met his burden, as far as I'm concerned, under Edwards. Clearly, that's what your defense in the previous opinion or order said. But, Your Honor, well, Edwards provides a lower... The actual innocent standard is lower. The colorable claim standard is lower than the cause and prejudice standard. What Davis makes clear is it's still considered an immense procedural hurdle. It's a very high bar that this defendant needs to show. Right. I thought for a moment that the petition, the successive petition as alleged, stated a claim of actual innocence under the case law. In other words, that it established that the evidence was new, that it was material, that it was non-cumulative, and it was likely to change the outcome based upon a review of the evidence at trial. I would certainly be of the opinion that this would warrant a remand. But I believe that we do need to examine the successive petition. And so, it would be so easy for every single case that is sitting there, either tried or waiting to be tried, for a family member to come in and say five, eight, ten years later that another person told me that he committed the crime. It's just too easy. And as our own Supreme Court pointed out, how simple it would be for every single defendant to have a family member or friend say someone else confessed to me. If that were simply the test, then every single case that's ever been tried would have to be retried because that's an innocent person. Now, the evidence at trial is what it is. These affidavits are before us. We have to look at them. The Supreme Court has done it. Other courts have done it. But if this successive petition has stated a claim for actual innocence and the elements have been established, then we should let it proceed. That's really the issue. If it doesn't, then we don't send it back. And the people are not... Every single case would have to be retried if we were to permit affidavits to be filed by family members and friends years after the offense and say that another person... I don't even know his last name. Willie. Let's call him Willie. He told me he committed the crime. But then the burden would be at the evidentiary hearing to produce Willie and have him say it. He has to sustain his burden before he's entitled to any evidentiary hearing. And if you would give me a few minutes, I would like very much to discuss with you why he can't meet the burden that the Supreme Court has set out in Edwards. I believe that you would concur that the trial is the core of our criminal justice system. And it has to remain the primary place where guilt or innocence is determined. A defendant has to do his due diligence at trial to present whatever evidence he wants to present. He's not required, but he's entitled to. And the problem with these successive petitions, where you get family members and friends who are available at the time of trial to provide testimony, and then the defendant comes not in his first petition, but in a successive petition, and he wants to be granted these highly disfavored successive proceedings based on testimony that is clear from the proceedings in his first petition, he knew of at that time. Now, I believe... He knew about it, but it wasn't available. No, Your Honor, do you know that there's not one single allegation in any of the defendants' successive petitions or his affidavits that says, by reason of science, by reason of science, I was not willing to sign an affidavit earlier. And that's what this Court's majority recognized in its opinion. It's not that the affidavits just could have been included with the first petition. It's that the defendant hasn't explained what is his burden to explain why he was unable to procure these affidavits during the first post-conviction proceedings. His argument or his claim is that his lawyer failed to procure them and that he provided an unreasonable level of assistance post-conviction counsel. Therefore, he's established cause for the reason why he couldn't present his actual innocence claim in the first instance. He has established no such thing, and his lawyer was not constitutionally deficient, and he certainly wasn't entitled to the constitutional assistance of counsel. Well, shouldn't we allow it to go to the second stage at least so that the lawyer can get a hold of it and make proper affidavits? These affidavits won't appear by the first amendment. These affidavits aren't going to get any better. Do you really think that Jermaine Bledsoe, who doesn't really say anything, and Willie Matlock are going to ever appear? Will they ever appear? Those are the affidavits that the defendant was unable to obtain. That's what the record from the first proceeding shows. What this attorney did... It's a change from the time of the first petition to the time of the second. Correct. He had counsel prepare a petition. Counsel included an actual innocence claim because clearly that's what the defendant wanted. Counsel was informed by the defendant's family and friends that they had information that the defendant was innocent. He prepared his petition. He included that claim. Counsel then conducted due diligence. He did an investigation. He interviewed all the people that the defendant said. He tried to interview Willie Matlock. Whether or not Willie Matlock raised his Fifth Amendment rights, or Willie Matlock said, I never confessed. I didn't do this. I don't know why these people are telling you that. We don't know. But we do know that the attorney then went before the court and he withdrew that claim. He filed an amended petition that didn't include that claim. Counsel argues that that was an unreasonable level of post-conviction counsel. That was. Therefore, that establishes prejudice, and somehow we get back to whether or not that's supposed to then take us to the actual innocence requirement of four different adults. I think what counsel is trying to say is that he is relieved of his obligation of showing due diligence because of the unreasonable or the ineffective assistance of counsel. But he's not entitled to the effective assistance of counsel, and Martinez v. Ryan does not impose his position at all. Martinez, if you accept the defendant's analysis, here's what he's saying. Martinez says, if my first opportunity to raise a claim of ineffective assistance of trial counsel is post-conviction proceedings, I am entitled to have a lawyer help me raise that claim. Just the way I would be entitled to have a lawyer help me raise that claim on direct appeal. That's what Martinez says. And as a matter of equity, not a matter of Constitutional law, the U.S. Supreme Court agreed. Now the defendant here is saying, my first opportunity to raise my actual innocence claim was my first post-conviction petition. So I was entitled to the Constitutional assistance of counsel in raising that claim. He doesn't say the Constitutional assistance of counsel. It says the reasonable statutory required reasonable. No, he says counsel was constitutionally deficient. He was ineffective. That's what he argues. Not the reasonable assistance, but because he can establish with counsel the only way that the assistance of post-conviction counsel can be deemed cause is if counsel fails to meet the Constitutional guarantee of effective assistance. The only way counsel's deficient performance can be caused and is excessive is if it reaches a level of strickling? Correct. What case says that? I believe it's either Murray v. Carrier or Nepresco v. Vant. You're talking about the U.S. Supreme Court? Yes. And that's how we developed our cause and prejudice test. We took it from Nepresco v. Vant. So you would say when we're determining cause, whether we should be relaxing procedural barriers, we should look at federal law as well as state? That's where our cause and prejudice test is drawn from, the federal law. I agree. And you believe that there should be one here in this case? I believe that there should be one here. A cause and prejudice. No, that's not. What the defendant is arguing is that the procedure and there really isn't a procedural bar on where should it happen. There is a disfavored successive petition bar, which he says should be relaxed because my attorney at the first proceeding failed to perform in the way that he should have such that it was so egregious he didn't meet the circumstances. And so was counsel objectively unreasonable in withdrawing the claim because he couldn't get any antidotes? I can't believe there's a court in this land that would find an attorney who investigated witnesses, who interviewed them, who had them brought to his office more than one time, and who determined at the end of those interviews he could not in good faith bring this claim, that can't qualify as being objectively unreasonable. Doesn't the record show that this attorney in fact prepared the affidavits at the time? They weren't as far as them being prepared. You just didn't get the signatures on them. I think that that's implied. I don't think that is explicitly said. Okay, and where in the record does this attorney say, I didn't file these four affidavits? Not the affidavit of Willie Madlock, not the affidavit of Jermaine Bledsoe, who I'm not even sure if he was alive at the time, but the four people who are now testifying, now open as a finance. Where in the record at the successive, or actually at the initial post-conviction petition hearing, does the post-conviction counsel say, I did not submit those affidavits because in good faith I did not put them at the standard? I have to tell you, I did not see that. It isn't there, but your honor, that would be, he would have to file a gray motion. He didn't file a gray motion because he withdrew the issue. And he explained to the court why he withdrew the issue. He didn't withdraw the issue, he just didn't develop that. No, he filed an amended petition. The amended petition had the same claims in it. The same undeveloped claims. He just didn't attach affidavits. And the conversation about his performance, which admittedly was somewhat curt, came into context at the same time as the motion to dismiss was being litigated before Judge Hadley. We had the lawyer himself saying, I want a new lawyer. Because my lawyer is not supplementing my petition. He's not supporting my petition. Isn't that what he said? Your honor, I actually did not have the record from the original post-conviction proceedings in preparing for this oral argument. I have the brief. I do not know, but I'm My understanding was that it was all happening at the same time. It came upon a motion to dismiss. I believe it was a motion to dismiss, the first stage. It was actually the second stage because he had counsel. And LeVar Moore moved for substitution of counsel. His position was, my lawyer, very similar to what we're hearing from him now, my lawyer is not supporting my petition with affidavits. He didn't actually say with affidavits. He said he's not investigating this. He's not doing enough. And so Judge Hadley gave counsel an opportunity to respond. And he said, he had two different explanations. I think at that point he referred to a person who was probably really mad at him, saying the person came and his mother brought him in, that kind of thing. He never said the score of clients. He never specifically addressed why he did not choose to attach any particular affidavit. But the clients now come in, and we see their affidavits, and they all say they met with counsel, and it sure looks like he actually went as far as drafting the affidavits. He just didn't sign them and submit them. I mean, do I have that all right? I think I do. Except for the part that none of the clients say that they were always willing, ready, and able to sign these affidavits but didn't because Mr. Peters, who's also dead now, didn't ask them to put that in their affidavit. I don't think that it is appropriate or warranted in a general courtroom proceedings for a lawyer to have to put on the record reasons for the exercise of his professional discretion and judgment. Okay, and that's fine. I respect that. This was not a full-blown hearing on his performance anyway, so I even more support what you're saying. But how can we turn around and say that the reason counsel did not attach those affidavits could not have been an efficient performance? How can we say it was his? Because it's a presumption under Strickland that when an attorney investigates a claim and doesn't proceed on it, that he has a good safe basis for doing so. That is a required starting place for this court's analysis. It's such that this is not a Strickland claim. Yes, it is a Strickland claim. It's not a Strickland claim. They're saying he's asking for a relaxation of procedural safeguard, a procedural bar, however you want to say it, because he's saying I wanted to submit these affidavits but my lawyer didn't do it. I tried to fire my lawyer. They wouldn't let me. He's saying give me a chance to have these heard. I don't think that has to be a Strickland claim. This is now seven years later. He's presenting the precise affidavits that were presented earlier with no explanation, none, that these assignments would not have provided these affidavits. You are now creating a scenario where you are allowing the defendant to do exactly what the Strickland court cautioned against. There is going to now be a mini-trial. Post-conviction counsel's performance, when you have substantial evidence of record that counsel did exactly what he was required under his professional ethics to do. He raised the claim because the defendant wanted it. He investigated the claim. He determined the claim could not go forward. He withdrew the claim. And I do believe, if I'm remembering the facts correctly, and at my age that's always a big yes, that he filed an amended petition. An amended petition has the effect of withdrawing the initial petition that did not include an actual innocence claim. So what the defendant here now has to show is that he exercised due diligence in presenting this information. And due diligence is demonstrated in Davis. The Supreme Court actually affirmed the denial of leave to file an ineffective assistance of counsel claim. And it affirmed the defendant in Davis in his sixth post-conviction petition alleged that trial counsel was ineffective for not interviewing a witness who would have testified at the juvenile transfer hearing. And that witness had testified at a grand jury proceeding and had given a very unsatisfying account of the defendant's involvement in the crime. And now in an affidavit attached to the fourth and fifth post-conviction petition, there's a much better account for the defendant. And this was the defendant's evidence showing ineffective assistance of counsel. And the Supreme Court in Davis said, nothing in this affidavit explains why it couldn't have been presented in any of his previous post-conviction proceedings. And that's what the defendant is lacking here. Why were these witnesses not available? These particular witnesses, he knew them, they were family friends, they were his mother, they were willing to help. Why were they not available? There is not one scintilla of either an allegation in the petition or in the affidavits themselves why they weren't presented. And that's why the defendant has failed his burden here. One of the reasons. Another reason is because these affidavits do not meet the Edwards standard for a tolerable claim. And my co-counsel can get into more detail on them, but if you look at Justice McBride properly recognized, Edwards shows the type of scrutiny that this court or any court looking at affidavits appended to a successive petition claiming actual innocence are subject to. Now, Edwards' co-defendant provided an affidavit in which he said, the defendant was not involved in the planning or the commission of this offense. And he had nothing to do with it. And the Supreme Court said, eh, not good enough. Because the defendant was convicted under an accountability hearing, and this affidavit does not relieve him of liability under accountability. So it is highly strict scrutiny that this court is to look at these affidavits under. But this affidavit, we have affidavits of who the shooter was. In any case, when you find out who the shooter is, you should go forward to find out if it's true or not. Your Honor, let's look at the reliability. The defendant is saying, none of these affidavits meet all four criteria of changes. We know that. And these affidavits have to be determined reliable in order to make the culpable claim standard. But the very thing he wants you to accept as an indicia of reliability is the linchpin of why these affidavits are allegedly relevant. Because, oh, I can't remember the co-defendant's name or the actual shooter. Willie Madlock has made statements against people. You've got a lawyer, you put the affidavits in proper form. This man may be an innocent man, and the state wants to leave innocent people in prison. I take great sense at that suggestion, Your Honor. I do not want to leave innocent people in jail. That is not what the purpose of the proceedings are. You want to put a bunch of little hoops in here so this man doesn't get a hearing. At a hearing, he would find out the truth of the matter. Well, actually, I thought that's what the trial was for. But, you know, we can go back to Edwards. And Justice Freeman wrote that decision. In fact, he was pointing out what the standard was for successive proceedings. But he examined an eyewitness account of the crime, not a statement by the defendant's mother or the defendant's girlfriend or the defendant's best friend saying that someone else told me that he did this or he committed this crime. It's not in any way comparable to anything that I've ever seen. But Chambers v. Mississippi is a good starting point. And what Chambers, the witness, the person who admitted that they shot the sheriff, Mr. McDonald, was present, available, and he testified at that trial. And the law of Mississippi at the time did not permit a witness to impeach their own witness, and it didn't allow a witness to cross-examine a witness who had already repudiated a confession that that person made to three of his dear friends immediately after he shot the sheriff. And there was so much evidence in that case involving McDonald that the United States Supreme Court said at his initial trial there was a violation of due process for two reasons. One, the evidence hearsay admissions should have been at least admitted. And two, that the government should have allowed or the courts should have allowed the cross-examination of Mr. McDonald who actually told people within a day of the murder that he actually shot the sheriff. I don't understand this whole suggestion that these affidavits are somehow in any way, shape, or form significant or in any way admissible as far as our case law. The one Supreme Court case where our Supreme Court allowed Chambers v. Mississippi type evidence was, again, a case where the other offender was actually charged, Mr. Lynch. I think it's in People v. Temple. That defendant who had been charged with the same murder in that case, the Supreme Court said, will relax this very, very limited exception to the hearsay rule. So, I don't know of any other case where the Illinois Supreme Court has examined third-party affidavits where family members and friends, ten years after an offense, said someone else told me he did it and the court said, this is definitely Chambers material. Let it go forward in the success of D.C. If anybody has a case like that, I would be certainly happy to look at it. If all the additional authority, perhaps maybe the parties can find something like that and we'd be happy to look at it. Mr. Lynch, if you can find anything like that. So, what about the sentencing? Should I go? Go ahead. No, please, Justice. Go ahead, please. Go ahead, please. Just help me out with this for a second. So, the Supreme Court has been pretty clear that at the first stage of either successive or initial post-conviction proceeding, we do not require conclusive proof. We do not require you to establish your case. It's a complete mistake, so to speak. And we take these affidavits as true at the pleading stage. So, if you're not required to prove your case yet and they're assumed to be true, are we in a position at this stage to say as a matter of law that these affidavits are unreliable? We are in a position at this stage to say that as a matter of law, these affidavits do not qualify as newly discovered evidence. They do not. Because these affidavits were there. That's a whole different question. I'm talking about Chambers. Could you please just answer my question? Under Chambers, I understand Chambers has some rules in it. They're not exhaustive. You don't have to satisfy all of them. All that good stuff. But ultimately, I read Chambers as being about reliability, which is what the Hearsay Rule itself is about. Is this reliable? And at this stage, when we take them as true and we say you don't have to prove your case yet, you don't have to win yet, you just have to feed yourself in, can we really say that they are inadmissible under Chambers? Yes, they are inadmissible under Chambers because the only element of Chambers that they meet is the alleged statement against penal interest. They're not corroborated. The only thing they're corroborated by is testimony that was rejected at trial. That's the only testimony that they corroborate. They're corroborated by DuJuan Jones? That testimony was rejected at trial. But you could always say that, right? But how is that corroboration? If you're now presenting testimony that was... By definition, in a post-conviction petition, we have somebody who's already been convicted, so the testimony that he put forth at trial to exonerate himself was, by definition, rejected. That's always going to be true. And to emphasize what Justice Ellis has pointed out, he's absolutely correct. In Chambers, the evidence that was corroborated was presented by the defense in that case. So that is not, I don't believe, a valid point. There's some corroboration here because you have a witness who said early on that Willie Matlock committed this crime. It was rejected, but I don't think the test is whether it was rejected. The test is whether there's some corroboration. Granting that, the only other thing is the statement against penal interest. But now you're bootstrapping. You're saying, I can show reliability because he made a statement against penal interest, but you have to believe that he made the statement in order for that to even exist. I don't think you can hang your... What's the best way to make the determination whether you believe he made the statement? Would it be reading a piece of paper or would it be having an evidentiary hearing? What would be, in your mind, the best way to figure out whether this is really reliable? If the defendant made the initial showing, he would be entitled to an evidentiary hearing. He has not made... I don't think that is not answering my question. Well, you just stated earlier that there's really no indication why the mother and the other two friends couldn't have provided this information since they already knew that this other person said Willie Madhawk committed the crime. Precisely. And, Your Honor, I would suggest that the evidence of record from the initial post-conviction proceedings demonstrates why it wasn't presented, because it wasn't believed. Yes, but when it goes to the second stage, then Laura will have the opportunity to look at it  And Laura has already looked at this claim, Your Honor. She's already examined this exact claim. But this isn't about a form. These are affidavits. An affidavit is simply a statement made under oath. This is not a question of whether they don't meet a form. The question is the content. Is the content the type of evidence that Edwards rejected? Edwards stands for the proposition that this court, a reviewing court, can determine whether or not, as a matter of law, this claim states a claim for actual innocence. And that's really the heart of the matter. Edwards is a case where the Illinois Supreme Court reviewed what that standard was, they set it out, and then they went on to consider whether a defendant, the defendant's co-defendant eyewitness's account of the crime was something that would raise a claim, a colorable claim of actual innocence. And they reviewed that affidavit, and they made a determination that it was not, as a matter of law, stating a claim for actual innocence. The Supreme Court, and we know where everybody is, and this is here, but the Supreme Court considered this court's opinion as to whether or not the affidavits were sufficient to make a colorable claim of actual innocence, or to make the threshold showing, and they didn't grant the defendant's petition for a PLA. They did not, I recognize that this doesn't have precedential value, but I certainly think it's something that this court could consider. It did not find this court's original position so egregiously wrong that it overturned it. It allowed that question to stand, and it remanded back here for doses. Well, it has no precedential value at all. A supervisory order has no precedential value at all. However, you know, I think you cited some cases. What else do you want to say about this? Very briefly, Your Honor, I just want to talk about what you asked me about at the beginning of this argument, and that is why we shouldn't grant release. And I think the recent case of Peeble v. Thompson demonstrates that this is a scenario like Jones, that the Supreme Court has recognized that an as-applied challenge does not qualify as a void sentence or a void ruling. This isn't an as-applied challenge. This isn't an as-applied challenge. No, this isn't. Davis was an as-applied challenge. It wasn't a social challenge. As this court recognized in its original December 13th, December 2013 ruling, that a finding that a mandatory life sentence imposed on a juvenile is not void ever this year  So this court recognized pre-Davis what Davis held. It's not void ever this year. And because it's not void ever this year, the defendant has to have raised the claim in his petition below in order for this court to have the authority to consider the issue. And he allowed a supplemental briefing so that he could raise this very issue in the last appeal, didn't he? You did, but you're not allowed to raise a new claim under Jones for the first time on appeal, and Thompson affirms that. But don't you agree that if he were to file a successive post-conviction petition tomorrow in the trial court, he'd be entitled to a new sentencing hearing? If he'd filed a year ago, he'd probably already have this hearing. But that's not what the issue is before this court. And Thompson makes clear that the Supreme Court intends to apply that rule strictly. Would we be subject to mandamus if we entered an order allowing a new sentencing hearing? I know we're subject to mandamus if we don't follow the mandate of the Supreme Court, because they can't issue an erroneous order. But would we be subject to mandamus if we allowed a new sentencing hearing when the state concedes that if he were to file a successive post-conviction petition tomorrow, he'd be entitled to a new sentencing hearing? I don't know if mandamus would appropriately allow, but I believe that based on Thompson, there would be a claim that your consideration of a claim that was not before the circuit court of a new claim reached for the first time on appeal that does not entitle a void judgment is improper. And that's what Thompson says. And the defendant's extrapolation from Thompson's distinguishing of Luciano is, and this has gone in detail in my argument, I will not keep the court running, in my response to his motion. It undercuts, he's saying that Thompson created an exception to the rule that he had just created. That you can't raise it for the first time on appeal in a 214-01, but if you're on appeal from a PC and your claim has merit, then you can raise it for the first time on appeal. That's a little different, because wasn't he 19? But it's still an as-applied challenge to the constitutionality of the sentence. He does not come within the parameters, and I think that's what the court was saying when it cited Luciano and Morphin, that those cases involve defendants who did come within the direct parameters of Miller. But to say that the court intended to create an exception that undercut the whole premise of the very closing that it had in Thompson is to turn that decision on its head. It is not what the Supreme Court intended. It is not what they envisioned when they said that, and this court should not interpret Thompson. Because the defendant did not raise the claim in a successive petition, but only raised it for the first time on appeal because it does not entail a verdict judgment. Case remedy, like this court recognized in its original order, is for this case to be remanded for him to file a successive petition. And, Your Honors, I did not go into detail. I'm sorry. Luciano, Luciano, that was a post-conviction case, right? Didn't they raise it for the first time on appeal? They did. What am I missing then? And Morphin as well, right? No, Morphin raised it in his petition. Okay. And when we argued Thompson before the Illinois Supreme Court, we explained that Luciano was an outlier. It was not like Morphin. Okay. What did the Supreme Court say about Luciano? The Supreme Court clumped Morphin and Luciano together and noted that, like this court, they were properly recognized pre-datus that Miller v. Alabama announced a new substantive rule and that these defendants came within the holding of Miller v. Alabama by virtue of their age at the time of the commission of the crime. But the people do not believe that the court's discussion in Thompson of Luciano should be interpreted in the very broad manner that the defendant says. Because what the defendant says is, the court in Thompson says, if you cannot raise, Thompson very specifically rejects the theory on which Luciano, the Luciano court allowed him to raise it for the first time on appeal. Luciano says a constitutional sentence, a sentence which is unconstitutional is void and can be challenged at any time. And Thompson specifically rejects that premise. But the defendant in Thompson was trying to appeal in a 214-01, right? Just like Gray. Correct. And Your Honor was correct. Gray is controlled by Thompson and they are the same. Thompson and Gray are the same case. And so both of those cases, I thought, correct me if I'm wrong, made a distinction between the post-convention act and 214-01. If you don't file a comment under 214-01 and then turn around and say, well, that's okay because it's a void sentence, I can always challenge it. And the court said, no, not if you don't, I mean, if I'm going to file this under 214-01, but post-convictions are different. And then Luciano is an example of a case where, if I remember correctly, it was a denial of a post-conviction and it was raised for the first time on appeal. And the Supreme Court said, Thompson, Luciano, is different than the case in front of us. That's okay. This is not. So why don't we, if I'm right about that, why don't we just say the same thing? That's okay. I don't think that, I would agree with everything you said up until that's okay. I think that what the court said is, we don't find this persuasive authority for his position and here's why. But that doesn't change the fact that you still have, if you're harking back to your own philosophy course, premise A, premise B, premise C conclusion. Premise A, the necessary precursor to any conclusion that he gets released, is that this sentence can be challenged at any time. That's necessary. And the Supreme Court in Thompson specifically said, no. This isn't a sentence that can be challenged at any time. And because it is a sentence that can be challenged at any time, because he didn't lose it in this successive petition, that issue is not properly before this court. Does this court wish to hear any discussion, further discussion from my counsel? I am sorry for extending my time. For these reasons and all the reasons stated in the people's brief, we would respectfully ask this court to affirm its December 2013 ruling, affirming the denial of leave to file. Thank you, Your Honor. Mr. Lentz. Thank you, Your Honor. Very briefly, I'll rest on the following on the sentencing issue. The only thing I'll say about the authority issue is that the PLA denial was not a judgment on the merits of this court's prior ruling on an actual instance claim. So I just want to say a few words about the affidavits. It's not surprising that these affidavits, short of getting really mad about the affidavits, it's not surprising that the affidavits are a friend and family of Mr. Warren, who of course acted on his behalf outside of prison. It's also not surprising that two of the affidavits may not have known Willie Matlock's last name. They knew he was Willie. They knew he was a friend of Jermaine's. They were being honest when they said they didn't know his last name. All of these are things that need to be resolved as a motion to dismiss, and are an evidence you're hearing. What we want to say about the affidavits is what the lawyer said. So we know about the record that explains why it took so long to get the affidavits. The lawyer said to the court in 2004, I believe, that the affidavits, along with Mr. Matlock, refused to provide the affidavits. What we know from this record is that Mr. Warren, when he obtained the affidavits, he filed his petition. That is why he's raised a credible claim that this is newly discovered evidence. And I would ask that you reenact this type of state proceedings. Thank you. We want to thank the parties for their excellent presentation and readiness for the oral argument today. I compliment both of you, and I'm sure my colleagues do as well. So, again, thank you for the presentation of oral arguments, and the case will be taken under advice.